FREDERICK STRECK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Streck v. Commissioner
Docket No. 5070-80.
United States Tax Court
T.C. Memo 1982-391; 1982 Tax Ct. Memo LEXIS 358; 44 T.C.M. (CCH) 437; T.C.M. (RIA) 82391; July 13, 1982. Eugene J. Steiner, for the petitioner. Bradford A. Johnson, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Chief Judge: Respondent determined a deficiency of $8,241.93 in petitioner's Federal gift tax for the calendar quarter ended September 30, 1975. We must determine whether petitioner made completed gifts of life insurance proceeds to his daughters on July 31, 1975. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, Frederick Streck, resided *359 in Menands, New York, at the time the petition in this case was filed. On October 15, 1952, petitioner established an inter vivos trust naming the Mechanics and Farmers' Bank of Albany [1] as trustee. Pursuant to the trust agreement, the trustee purchased an insurance policy in the face amount of $60,000 on the life of petitioner's wife, Emma Streck. The trust agreement in relevant part provided: FIFTH: Upon the issuance of each such policy, the Trustee shall receive and hold the same * * * until such time as such policies lapse or until the death of the Insured. SIXTH: From year to year, upon receipt by the Trustee of the annual premium notice from the Insurer, the Trustee shall, until the death of the Settlor, give notice in writing, mailed to the last known addresses of the Settlor and the Insured, stating therein the amount of the gross premium * * *. NINTH: Such sum or sums as the Trustee may receive from the Insurer at any time and from time to time as a payment of cash surrender value and as * * * [distributions under various payment options] and as net proceeds *360 of any said policies, shall be held by the Trustee as corpus of this trust. Such sum or sums as the Trustee may receive as interest paid by the Insurer under the interest option and as a dividend [under specified circumstance] * * * shall be received and disbursed by the Trustee as income. TENTH: Notwithstanding any other provision of this Agreement, ten per cent (10%) of the net proceeds of each trust created hereunder shall be paid at such time or times as the Trustee, in its sole discretion, shall deem advisable to and for the use of the following charities in the following proportions: ELEVENTH: The Trustee shall receive the corpus of this trust as paid to it from time to time and shall divide the same into as many separate trusts as there are children of the Settlor then living * * *. [The trustee shall apply the income as it deems proper for the maintenance, support, and education of the Settlor's children. When a child reaches 21 years, one-half of the principal of her trust is to be paid to her. When she reaches 26 years, she is to be paid the entire corpus and accumulated income from her trust.] SIXTEENTH: The Settlor shall have the right to modify, *361 alter or amend this agreement by an instrument in writing, duly acknowledged and filed with the Trustee, except that the Settlor may not under any circumstances modify, alter or amend this agreement so that any part of the corpus or income hereunder shall revert to or be paid to the said Settlor, his estate, his creditors or the creditors of his estate. Beginning on October 15, 1952, and continuing through October 1974, petitioner made annual payments in the amount of the insurance premium, $2,197.20, to the trustee. The trustee in turn paid this amount to the insurance company. Petitioner transferred no property or monies to the trustee other than the annual payments of $2,197.20. On June 28, 1963, petitioner sent a letter to the trustee indicating that he would like to amend paragraph 10 of the trust agreement relating to the charitable beneficiaries and that he would like the trustee to buy additional life insurance from the accumulated insurance dividends. [2] On October 27, 1965, petitioner filed a writing with the Bank which stated that pursuant to petitioner's reserved right to modify, alter, or amend the original trust agreement, paragraph 10 is amended. (Petitioner *362 changed the names of those charitable beneficiaries entitled to receive 10 percent of the trust proceeds.) Emma Streck died on July 31, 1975. On August 20, 1975, the Bank received $99,304.45 from the insurance company. After attorney's fees and trustee commissions were paid, the amount remaining for distribution was $94,649.97. The trustee filed an "Agreement Settling Trustee's Account" with the Supreme Court, New York County, on or about March 16, 1976. In April 1976, the Bank distributed the insurance proceeds as follows: Beneficiary
Amount
Benedictine Mission of Schuyler, Nebraska*
$4,965.23
The Society for the Propogation of the Faith, Diocese of Albany *
4,965.22
Christine S. DeMaranville (petitioner's daughter)
42,359.76
Emmy S. O'Brien (petitioner's daughter)
42,359.76
*363 Ms. DeMaranville and Ms. O'Brien were born on January 9, 1937, and December 26, 1938, respectively. Petitioner has not filed any gift tax returns with respect to any sums paid into or distributed from the trust. OPINION Petitioner and respondent agree that: (1) any gifts made by Mr. Streck on the establishment of the trust in 1952 were incomplete and not subject to the gift tax, see section 25.2511-2(b), (c), Gift Tax Regs.; (2) because of Mr. Streck's reserved power to alter, modify, or amend the trust agreement, only upon the trust's termination did the gifts become complete and thus subject to the gift tax, see section 25.2511-2(f), Gift Tax Regs. The parties disagree, however, as to when the trust terminated. [3]
Respondent takes the position that the trust terminated upon Mrs. Streck's death on July 31, 1975. Petitioner counters with the argument that paragraph eleven, which *364 provides that each daugher is to receive one-half of her share of the trust corpus on her twenty-first birthday and her remaining share of corpus and accumulated income on her twenty-sixth birthday, mandates the conclusion that each daughter's interest in the trust terminated when she turned twenty-six (i.e., in 1963 with respect to Ms. DeMaranville and in 1964 with respect to Ms. O'Brien). We disagree with petitioner and, as a consequence, sustain respondent's determination. The only asset transferred to the trust was the insurance policy. As a result, at the daughters' twenty-first and twenty-sixth birthdays the only thing available for distribution by the trustee was the insurance policy itself. [4] The trust instrument is clear, however, that the policy itself (or an undivided interest therein) was not to be distributed by the trustee. The trustee was to hold the insurance policy "until such time as such policies lapse or until the death of the Insured." The insurance policy was not part of the trust corpus available for distribution; the corpus was defined as "such sum or sums as the Trustee may receive from the Insurer." [Emphasis supplied.] Additional language *365 in the trust instrument convinces us that Mr Streck did not envision that the insurance policy (as opposed to the proceeds) would be distributed to his daughters: (1) the trustee had the sole discretion "prior to the death of the Insured, and after such event" to make payment elections in respect of the insurance proceeds; (2) the trustee was to give notice to the settlor of the amount of the premiums "until the death of the Settlor." Petitioner argues that at age twenty-one and twenty-six, each daughter was entitled to her portion of the cash surrender value of the insurance policy. Again, we note that the agreement provided that the trustee "shall receive and hold [the policy] * * * until such time as such policies lapse or until the death of the Insured." Had the policy lapsed and had the trustee received its cash surrender value, petitioner's argument might have some force. Neither of those events occurred, however, and we find no support for petitioner's contention that the trustee was *366 required, or even empowered, to cash in the policy when the older daughter turned twenty-one. We conclude that the trust terminated and petitioner's gifts to his daughters became complete on July 31, 1975. Our conclusion is buttressed by the fact that our interpretation of the agreement corresponds to what appears to have been the settlor's, the trustee's, and the beneficiaries' interpretation of the agreement prior to Mrs. Streck's death. Ms. DeMaranville and Ms. O'Brien did not claim entitlement to the trust corpus on their twenty-first and twenty-sixth birthdays. Additionally, although now contending that the trusts terminated in 1963 and 1964, Mr. Streck amended the trust in October of 1965, and continued, until Mrs. Streck's death, to transfer money tothetrustee to make the premium payments. [5]
*367 In sum, we are satisfied the language of the trust instrument clearly supports respondent's conclusion and that, even if we were to consider that some ambiguity existed because the instrument contains no explicit language as to termination, there is nothing in the record which would persuade us to reach a contrary conclusion. Decision will be entered for the respondent.
Footnotes
1. The Mechanics and Farmers' Bank of Albany has been succeeded by the Bank of New York.↩
2. The trust agreement provided that the policy "have such provisions concerning the use of dividends as the Trustee, in its sole discretion, may decide after giving due weight to any request in writing filed with it by the Settlor."↩
*. These are charitable organizations within the purview of section 170(c), Internal Revenue Code of 1954↩.
3. Although there was a single trust agreement, it provided for the trustee to divide the corpus into as many separate trusts "as there are children of the Settlor then living and children of the Settlor who have died leaving issue." For convenience, however, we will refer to a single trust.↩
4. It seems possible that the trustee may also have had available a small amount of dividends received from the insurance company but there is no evidence of that in the record.↩
5. We note in a letter to the trustee on June 28, 1963 (after the older daughter had attained the age of 26 and the younger daughter had long since passed her 21st birthday), Mr. Streck referred to the insurance policy "which is being held in Trust for our children." Such language is hardly consistent with any concept that the trust was to terminate in whole or in part on each of the daughters attaining the specified ages.↩